IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CAROLYN R. HAINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 125-143 |
| | ) | |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.    **BACKGROUND**

Plaintiff applied for DIB in June 2022, alleging a disability onset date of January 1, 2015. Tr. ("R."), pp. 10, 74, 187-90. Plaintiff last met the insured status requirements of the Social Security Act for DIB on September 30, 2017. R. 10, 74, 254. Plaintiff was fifty years old on her alleged disability onset date and was sixty years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 10, 22, 254. Plaintiff attended

college, and prior to her alleged disability date, had worked in a dry-cleaning business, as a paraprofessional in high school and middle school, and as a sales associate in a general store; none of these jobs qualified as past relevant work as defined in the social security regulations.  R. 20, 225.  Plaintiff applied for benefits due to:  military sexual trauma (MST), post-traumatic stress disorder (PTSD), a herniated disc, depression, and anxiety.  R. 18, 224, 239.  Plaintiff also alleged knee and foot injuries, (R. 239), with her knee conditions recorded in Veterans Administration ("VA") records as chondromalacia and arthralgia, (R. 636, 745, 927).

The Social Security Administration denied Plaintiff's application initially, (R. 74-83) and on reconsideration, (R. 84-92).  Plaintiff requested a hearing before an ALJ, (R. 107-08, 110), and the ALJ held a hearing on January 21, 2025, (R. 39).  Represented by counsel,[1] Plaintiff appeared and testified, as did a vocational expert ("VE").  R. 39-73.  On February 7, 2025, the ALJ issued a decision finding Plaintiff not disabled.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date of January 1, 2015, through her date last insured ("DLI") of September 30, 2017 (C.F.R. § 404.1571 *et seq.*).

2. Through the DLI, claimant had the following severe impairments:  left hallux valgus, bilateral pes planus, obesity, left carpal tunnel syndrome, left shoulder rotator cuff tear, major depressive disorder, anxiety (20 C.F.R. § 404.1520(c)).

3. Through the DLI, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526).

---

[1]Plaintiff is represented by a different attorney in these federal court proceedings.

4. Through the DLI, the claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[2] including the ability to occasionally lift and/or carry 20 pounds and frequently 10 pounds, sit for six hours, and stand and/or walk for six hours. Additionally, she can frequently operate foot controls and occasionally operate hand controls with the left non-dominant hand. She can occasionally reach overhead with the left upper extremity. She can frequently reach in all other directions with the left upper extremity. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, and crouch. She can never crawl. She can never work at unprotected heights and can occasionally work near moving and mechanical parts. She can occasionally operate a motor vehicle as a work requirement. She can tolerate occasional exposure to humidity and wetness, extreme cold, and extreme heat. She can tolerate moderate noise. She is capable of simple, routine tasks, but not at a production rate pace (e.g., assembly line work). She can make simple work-related decisions. She can frequently interact with supervisors and co-workers. She can occasionally interact with the public. She can tolerate occasional changes in a routine work setting in terms of core work duties and processes. The claimant has no past relevant work. (20 C.F.R. § 404.1565).

5. Through the DLI, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including representative occupations such as router, marker, and order caller (20 C.F.R. §§ 404.1569 and 404.1569a). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2015, the alleged onset date, through September 30, 2017, the DLI (20 C.F.R. § 404.1520(g)).

R. 12-22.

---

[2]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

When the Appeals Council denied Plaintiff's request for review, (R. 1-5), the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to determine whether Plaintiff had a medically determinable knee impairment and thus failed to adequately consider related functional limitations in the RFC assessment, and (2) failed to properly evaluate Plaintiff's testimony about her subjective symptoms related to her knee impairment, as well as to her foot and left shoulder impairments. See Pl.'s Br., doc. no. 8; Pl.'s Reply, doc. no. 15. The Commissioner maintains the ALJ's decision "arguably accounts" for Plaintiff's alleged knee impairment in combination with all of Plaintiff's impairments for the limited relevant time period from January 1, 2015, to September 30, 2017, and because the administrative decision is supported by substantial evidence, it should be affirmed. See Comm'r's Br., doc. no. 14.

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole

record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    DISCUSSION

The case should be remanded because when developing Plaintiff's RFC, the ALJ did not conduct a complete review of the record. In particular, when formulating an RFC that

5

includes an ability to stand and/or walk for six hours despite other impairments compounded by a diagnosis of obesity, the ALJ failed to include any discussion evaluating Plaintiff's knee impairments at every step in the sequential evaluation process – including when identifying Plaintiff's medically determinable impairments and when considering Plaintiff's subjective complaints.

### A.    Steps Two and Three of Sequential Evaluation

At step two, the ALJ considers if a claimant has a severe impairment.  A severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  Basic work activities involve "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  Id. § 404.1522(b).  In order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected."  McDaniel, 800 F.2d at 1031.  The claimant's burden is "mild."  Id.  Nevertheless, a medical diagnosis does not automatically equate to the existence of a "severe" impairment.  Rather, functional limitations attendant to a diagnosis, not the mere existence of an impairment, guide the administrative analysis.  See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they

6

limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (*per curiam*).

Moreover, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant.  Id. Thus, at step three, the ALJ determines "if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability.  The ALJ must consider the applicant's medical condition taken a whole."  Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted).

B.      Step Four of Sequential Evaluation

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments."  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted), *superseded on other grounds by* 20 C.F.R. 404.1520c.  Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying,

7

pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

C.      **Evaluating Subjective Complaints**

As part of formulating the RFC, the ALJ must evaluate a claimant's subjective complaints, for which the Eleventh Circuit has established a three-part standard of evaluation. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (*per curiam*) (citing 20 C.F.R. § 404.1529(c)(4)). When evaluating "the intensity,

persistence, and limiting effects" of a claimant's symptoms, the ALJ should consider: "(1) daily activities; (2) location, duration, frequency, and intensity of symptoms and pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medications; (5) treatment other than medication; (6) any other measures used to relieve symptoms; and (7) any other factors concerning his functional limitations."  Walker v. Soc. Sec. Admin., Comm'r, No. 21-12732, 2022 WL 1022730, at *1 (11th Cir. Apr. 5, 2022) (*per curiam*) (citation omitted).

In doing so, the ALJ is not judging a claimant's credibility or character for truthfulness, but rather "whether the 'individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.'" Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) (quoting SSR 16-3p, 2016 WL 1020935, at *14170 (orig. publ. Mar. 16, 2016)).  Social Security Ruling 16-3p clarifies "that subjective symptom evaluation is not an examination of an individual's character . . . [but rather is an evaluation of] the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . ." SSR 16-3p, 2016 WL 1020935, at *14167.

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[3]  As courts within this Circuit have explained,

> SSR 16–3p also expressly provides that the ALJ may not make conclusory statements about having considered the symptoms, or merely recite the factors described in the regulations.  Rather, the determination or decision must contain

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

specific reasons for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Ring v. Berryhill, 241 F. Supp.3d 1235, 1251 (N.D. Ala. 2017), *aff'd sub nom*. Ring v. Soc. Sec. Admin., Comm'r, 728 F. App'x 966 (11th Cir. 2018) (*per curiam*); see also Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (*per curiam*) ("Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection. . . .") When reviewing the ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011) (*per curiam*).

### D. Remand Is Warranted Because the Administrative Decision Does Not Mention the Condition of Plaintiff's Knees

#### 1. ALJ Must Sufficiently Explain Rationale for Court to Conduct Meaningful Judicial Review

Though the Court's review of the administrative decision is deferential, the "ALJ must state with at least some measure of clarity the grounds for [his] decision, and [the Court] will not affirm 'simply because some rationale might have supported the ALJ's conclusions.'" Brightmon v. Soc. Sec. Admin., Comm'r, 743 F. App'x 347, 351 (11th Cir. 2018) (*per curiam*) (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)). Stated otherwise, the Court is not to be a rubber stamp when reviewing the administrative record and must "scrutinize the record as a whole to determine whether the conclusions reached are rational." Winschel, 631 F.3d at 1179 (citation omitted); see also Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1257 (11th

10

Cir. 2019) (explaining administrative decision not to be rubber-stamped, despite deference owed by reviewing court). "A decision is not supported by substantial evidence if the ALJ 'reached the result that he did by focusing on one aspect of the evidence and ignoring other parts of the record.'" Brightmon, 743 F. App'x at 351 (citing McCruter, 791 F.2d at 1548).

And although the ALJ is not required to explicitly connect every piece of evidence that is found to be inconsistent with a specific opinion or to discuss every piece of evidence, the explanation provided must not be a broad rejection of evidence that prevents the Court from conducting meaningful judicial review. See Gogel v. Comm'r of Soc. Sec., Case No. 2:20-cv-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing Dyer, 395 F.3d at 1211 and 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)). "What matters is whether the ALJ 'state[s] with at least some measure of clarity the grounds for his decision.'" Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1266 & n.14 (11th Cir. 2024) (quoting Winschel, 631 F.3d at 1179).

> **2. Failure to Discuss, Let Alone Analyze, Alleged Knee Conditions Documented in the Medical Record and Discussed in Hearing Testimony**

Plaintiff argues the ALJ never made an initial determination – despite record evidence documenting knee issues prior to and after the DLI, as well as hearing testimony concerning the same – whether Plaintiff's knee conditions qualified as medically determinable impairments. Therefore, the administrative decision is not supported by substantial evidence because those knee conditions were not considered singularly or in combination when formulating the RFC and when evaluating Plaintiff's subjective complaints. The Commissioner, on the other hand, argues the RFC "sufficiently accounted for any such condition during the relevant period through the DLI of September 30, 2017," and "arguably accounts for the combination of all Plaintiff's impairments," even if not specifically mentioned. Plaintiff has the better argument.

First, the Commissioner's position falters out of the gate because it focuses on the non-controversial general rule that the ALJ is not required at step two to identify all of Plaintiff's severe impairments so long as consideration is given to the consequences of a claimant's non-severe impairments on an ability to work at subsequent steps of the sequential evaluation process. Comm'r's Br., pp. 4-5 (citing Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); Delia v. Comm'r of Soc. Sec., 433 F. App'x 885, 887 (11th Cir. 2011) (*per curiam*); Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (*per curiam*)).  However, as Plaintiff points out in reply, the "argument is not that the ALJ erred by failing to find her knee impairment severe; it is that the ALJ erred by failing to determine whether Plaintiff had a medically determinable knee impairment at all."  Pl.'s Reply, p. 2.

Thus, the Commissioner's reliance on Delia, *supra*, is inapposite. There, the Eleventh Circuit determined the ALJ's error in failing to identify a specific impairment as severe at step two was harmless because the sequential process continued based on other severe impairments.  As the ALJ considered the impairment not specifically mentioned at step two, along with the consequences on Plaintiff's ability to work, at steps three, four, and five, remand was not warranted.  433 F. App'x at 887.

The Commissioner's reliance on Jamison, *supra*, is similarly unavailing, in that after stating the general proposition that finding any severe impairment, whether it qualifies as a disability or whether it results from a single, or combination of, impairment(s), satisfies step two, the Eleventh Circuit went on to explain:

> At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability.  The ALJ must consider the applicant's medical condition taken as a whole.  Likewise, the ALJ must consider the applicant's entire medical condition in determining whether the applicant can return to her past work (step four), and if

12

not, whether the applicant can perform other work available in the national economy (step five).

814 F.2d at 588.  The Jamison court was unable to determine whether the ALJ considered the claimant's entire medical condition as required throughout the sequential process based on the use of the general terminology "[a]fter careful consideration of the entire record" and an implied "general sense" of consideration based on a seriatim discussion of individual medical conditions. Id. at 589-90.

Here, the Commissioner adopts a similar, unpersuasive tactic by recounting language from the ALJ's decision concerning Plaintiff's "entire medical condition" or "medical condition taken as a whole."  Comm'r's Br., p. 7.  The Commissioner also notes the ALJ cited an over 500-page exhibit of medical records, 4F, throughout the opinion and points to one page in Exhibit 4F memorializing a knee condition as proof that the ALJ considered Plaintiff's entire medical condition, including the impairments alleged with respect to her knees.  Id. (citing R. 13-20, 927). Notably, however, the Commissioner does not identify any portion of the administrative decision that actually discusses Plaintiff's knees or otherwise performs any of the post-hoc analysis in the Commissioner's brief concerning evidence suggesting the alleged knee impairments would not prevent Plaintiff from performing the light work identified by the ALJ.  See Comm'r's Br., pp. 5-8.

Second, the Commissioner narrowly focuses on the time period for consideration of the alleged knee impairments as between the onset date of January 1, 2015, through the DLI, September 30, 2017.  The Commissioner relies on the non-disputed general rule that a DIB claimant must prove she became disabled prior to the expiration of her insured status and argues evidence generated after the DLI is generally not relevant to the issue of disability prior to the DLI.

13

Comm'r's Br, p. 9 (citing Moore v. Barnhart, 405 F. 3d 1208, 1211 (11th Cir. 2005) and Hughes v. Comm'r of Soc. Sec. Admin., 486 F. App'x 11, 13-14 (11th Cir. 2012) (*per curiam*)).  Thus, the Commissioner concludes that because Plaintiff's argument relies in part on evidence dated after the DLI, "at most, Plaintiff highlights the subsequent deterioration of a previously non-disabling knee condition." Id.  The Court disagrees.

Although Plaintiff does rely on some evidence post-dating her DLI, (Pl.'s Br., pp. 10-12, 15-16), the Eleventh Circuit recognizes in some circumstances, treatment received after the determination date may be relevant to the disability analysis.  See Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1322-23 (11th Cir. 2015) (*per curiam*) (citing Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir. 1983)); cf. Bailey v. Soc. Sec. Admin., Comm'r, 791 F. App'x 136, 142 (11th Cir. 2019) (*per curiam*) (explaining ALJ properly discounted medical evidence post-dating DLI where decision explained records not accurate reflection of abilities prior and up to DLI).  In any event, without even reaching the issue of whether the evidence post-dating the DLI is chronologically relevant, the Commissioner's conclusion about deterioration of a non-disabling knee condition mistakenly relies on his own post-hoc determination regarding the condition of Plaintiff's knees and presumed lack of limitation, singularly or in combination, prior to the DLI.  As discussed above, the administrative decision does not reflect any consideration by the ALJ of the condition of Plaintiff's knees before or after the DLI.

Moreover, the record does reflect problems with Plaintiff's knees documented prior to the DLI.  In her Function Report, Plaintiff identified "knee and foot injuries" as impacting her ability to work.  R. 239.  The Commissioner speculates, "Plaintiff may have been describing her condition as of December 2023 when she completed the form, instead of describing her

14

condition as it existed during the relevant period through September 30, 2017 (Tr. 239-46.)" There is nothing to support that conjecture one way or the other.

There is, however, hearing testimony where the ALJ asked Plaintiff about joint pain in both her knees with a diagnosis of chondromalacia in October of 2016.  R. 57.  Plaintiff's attorney pointed the ALJ to page 548 in Exhibit 4F, (R. 927), as the location of that diagnosis in the medical records.  R. 57.  Despite the ALJ's specific question concerning the state of Plaintiff's knees in 2016 – prior to the DLI – and the pinpoint reference to the medical records, there is no mention of the issue in the ALJ's analysis.  See R. 13-20.  Moreover, other records predating the DLI also reference knee issues.  See, e.g., R. 77 (Sept. 25, 2015 complaints of swelling in knees); R. 635-36 (June 14, 2017 knee arthralgia); R. 744-45 (Feb. 3, 2015 knee arthralgia); see also R. 857 (Nov. 7, 2014 x-rays of bilateral knees and report of "progressively worse" knee pain as high as 8/10).

The complete absence of any discussion of Plaintiff's knees is a glaring omission in light of the ALJ's discussion of Plaintiff's obesity.  As Plaintiff persuasively argues, the ALJ's failure to discuss whether Plaintiff's knee condition qualified as a medically determinable impairment "is particularly striking given that, in analyzing her obesity, the ALJ cited SSR 19-2p for the principle that an individual with obesity and arthritis affecting a weight gearing joint 'may have more pain and functional limitations that the person would have due to arthritis alone.'"  Pl.'s Br. p. 16 (citing R. 18).  While it may be that Plaintiff's knee condition is not a medically determinable impairment, or that even when considered singularly and/or in combination with other impairments Plaintiff is not prevented from performing light work, the ALJ's complete omission of any discussion of the condition of Plaintiff's knees means the

15

Court simply cannot perform a meaningful review to ensure compliance with applicable statutory and regulatory requirements.

In sum, an ALJ must consider all of a claimant's impairments, severe and non-severe, in combination. Heatly, 382 F. App'x at 825 (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also Robinson v. Astrue, 365 F. App'x 993, 995 (11th Cir. 2010) (*per curiam*) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)) (requiring administrative decision showing a claimant's medical condition was considered as a whole); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").  As discussed in detail above, the record documents issues with Plaintiff's knees before, during, and after the time period from January 1, 2015, through September 30, 2017.

Not only did the ALJ fail to make a finding on whether Plaintiff had a medically determinable impairment with respect to her knees, but there is no evidence the ALJ considered a knee condition when formulating Plaintiff's RFC for light work that included a stated ability to stand and/or walk for six hours in an eight-hour day.  Even if Plaintiff's knees were considered to be a non-severe impairment, the remainder of the ALJ's decision does not evidence any consideration of a knee condition as part of the entirety of Plaintiff's medical condition that must be considered when formulating the RFC during the remainder of the sequential process to determine Plaintiff had the ability to perform light work.

Moreover, the failure to even acknowledge the knee issue specifically discussed at the administrative hearing and documented in the medical records amounts to the ALJ providing no reviewable basis for rejecting Plaintiff's subjective complaints as is required under SSR 16-

16

3p. The Commissioner all but concedes this issue by generally arguing the ALJ's subjective symptom evaluation was sufficient as written, with no acknowledgment the symptom evaluation failed to discuss Plaintiff's knee-related allegations. Comm'r's Br., pp. 10-11. Indeed, if the ALJ did not determine whether Plaintiff had a medically determinable impairment with respect to her knees, he could not have determined whether such an impairment could reasonably be expected to produce the symptoms alleged by Plaintiff.

The Commissioner's attempt at a post-hoc explanation of why the omitted consideration of all of Plaintiff's impairments was permissible or does not otherwise change the disability determination cannot excuse the error because the Court may not now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (*per curiam*) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). Stated otherwise, the Court cannot rubber stamp an administrative decision the Commissioner argues "sufficiently" or "arguably" accounts for all of Plaintiff's impairments when the ALJ's decision does not demonstrate a clearly articulated rationale showing the entire record was considered.

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability application, but the Court cannot

17

conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contention concerning the analysis of her subjective complaints concerning her foot and left shoulder. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.")

IV.    **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 9th day of June, 2026, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA